**PRECISION STRIPING, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**Nos. 79–7490, 79–7597.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 16, 1980.

Decided March 23, 1981.

Bruce E. H. Johnson, Davis, Wright, Todd, Riese & Jones, Seattle, Wash., for petitioner.

Linda Dreeben (argued), John H. Ferguson, N.L.R.B., Washington, D. C., on brief, for respondent.

---

\* Honorable Edward C. Reed, United States District Judge for the District of Nevada, sitting by designation.

Before SKOPIL and ALARCON, Circuit Judges, and REED,\* District Judge.

SKOPIL, Circuit Judge:

## INTRODUCTION

Precision Striping, Inc. ("Precision") petitions for review of a decision of the National Labor Relations Board ("the Board"), 245 NLRB No. 34, 102 LRRM 1264 (1979). The Board cross-applies for enforcement of its order.

In March 1978, Precision informed the Painters' District Council No. 5 of the International Brotherhood of Painters and Allied Trades ("the Union") that the Union had failed to establish majority support among the employees in the bargaining unit, and Precision was repudiating their bargaining agreement. The Union filed charges with the Board.

## FACTS

Precision is a construction contractor. In June 1977 Precision signed an agreement with the Union effective through May 1980. This agreement succeeded two prior agreements, covering periods from April 1973 to June 1974, and from June 1974 through May 1977. Each of these contracts contained an eight-day union-security clause. There is some dispute regarding strict enforcement of the security clause. In July 1977 two of Precision's six employees were union members, and by September 1977, four of Precision's five employees were members. The Union never demonstrated that it represented a majority of Precision's employees, prior to the unfair labor practice proceeding.

In March 1978, Precision polled its employees to determine if they wanted to be represented by the Union. There is no dis-

pute as to the lawful conduct of the poll. Four employees voted against such representation; one voted in favor. Precision repudiated the agreement. It ceased contributing to the pension and health and welfare trusts.

## PROCEEDINGS BELOW

The Union filed unfair labor practice charges against Precision. The Board issued a complaint alleging violations of sections 8(a)(1) and (5) of the National Labor Relations Act ("the Act") in refusing to bargain and unilaterally changing conditions of employment.

The Administrative Law Judge ("ALJ") concluded that Precision had violated sections 8(a)(1) and (5) by repudiating a collective bargaining agreement without establishing a good faith doubt, based on objective factors, of the Union's majority status. Precision filed exceptions.

The Board affirmed. It based its conclusion on a finding that:

When Respondent polled its employees and withdrew recognition from the Union in March 1978, four of the five employees were union members in good standing. It therefore follows that the Union, possessing majority support from Respondent's employees at that time, was their collective-bargaining representative as defined in Section 9(a) of the Act, and was entitled to the irrebuttable presumption of majority status flowing from a valid labor agreement in such circumstances. Respondent thus did not have the right to repudiate its contract with the Union, or to poll its employees on the issue of continued Union representation, irrespective of whether it had a reasonable doubt, based upon objective considerations, of the Union's majority status. We therefore find entirely inapposite, and do not adopt, the Administrative Law Judge's discussion regarding whether Respondent's poll was prompted by a rea-

sonable doubt of the Union's majority support grounded in objective criteria. 102 LRRM at 1265.

Precision argues that the Board erred in finding that the Union possessed majority support and that Precision was therefore prohibited from repudiating the bargaining agreement.

## ISSUE

Did the Board err in finding that Precision committed an unfair labor practice in repudiating its agreement with the Union?

## DISCUSSION

### I. Standard of Review

■ The rule adopted by the Board is judicially reviewable for consistency with the Act, and for rationality. If it satisfies those criteria, the Board's application of the rule, if supported by substantial evidence on the record as a whole, must be enforced. *Beth Israel Hospital v. NLRB*, 437 U.S. 483, 501, 98 S.Ct. 2463, 2473, 57 L.Ed.2d 370 (1978); *NLRB v. International Harvester Co.*, 618 F.2d 85, 87 (9th Cir. 1980). The Board's interpretation of the Act is entitled to considerable deference. *Ford Motor Co. v. NLRB*, 441 U.S. 488, 497, 99 S.Ct. 1842, 1849, 60 L.Ed.2d 420 (1979); *International Harvester Co., supra.*

### II. The Nature of the Agreement

The agreements entered into between Precision and the Union are "pre-hire agreements," permitted in the construction industry by section 8(f) of the Act, 29 U.S.C. § 158(f). Such agreements allow an employer to bargain with a union before the union has attained majority status under section 9 of the Act, 29 U.S.C. § 159. To avoid imposing union representation on non-consenting employees, the Act provides that the agreements shall not be a bar to decertification petitions filed pursuant to section 9(c)(1)(A) of the Act. 29 U.S.C. § 158(f). Such agreements permit use of eight-day union security clauses, such as the one used here. *Id.*[1]

---

**1.** The Board's General Counsel argued below that the latest agreement was not a section 8(f)

agreement, but does not press that claim here.

### III. Effect of the Section 8(f) Agreement

 An employer's duty to bargain and honor a section 8(f) agreement is contingent upon the Union's obtaining majority support in the bargaining unit.[2] *NLRB v. Local 103, International Association of Bridge, Structural and Ornamental Iron-workers ("Higdon")*, 434 U.S. 335, 345, 98 S.Ct. 651, 657, 54 L.Ed.2d 586 (1978); *Authorized Air Conditioning Company v. NLRB*, 606 F.2d 899, 907 (9th Cir. 1979), *cert. denied*, 445 U.S. 950, 100 S.Ct. 1598, 63 L.Ed.2d 785 (1980).[3] When the Union obtains majority support, the parties' pre-hire agreement becomes a collective-bargaining agreement executed by the employer with the Union representing a majority of the employees in the unit. *Higdon*, 434 U.S. at 350, 98 S.Ct. at 660; *Authorized Air Conditioning*, 606 F.2d at 905. The pre-hire agreement is thus transformed into a section 9(a) contract. Upon transformation the contract bar rule applies. That rule prohibits challenges to an incumbent union's majority status during the term of an agreement of three years or less. *Pioneer Inn Associates v. NLRB*, 578 F.2d 835, 838 (9th Cir. 1978).

 In this case the Board determined that the Union possessed majority support among Precision's employees because a majority of those employees were union members. The Union contends it was entitled to an irrebuttable presumption of majority status flowing from the existence of a valid labor agreement. We disagree. This position is inconsistent with the Act, inconsistent with prior decisional law, and irrational.

 The Board has previously concluded that "there is no basis, either in logic or in policy, to extend to the union which is party to [a section 8(f) agreement] an irrebuttable presumption of majority status. Indeed, we conclude that any such presumption would be irreconcilable with the final proviso to Section 8(f)." *R. J. Smith Construction Co.*, 191 NLRB 691, 695 (1971), *enforcement denied*, 480 F.2d 1186 (D.C.Cir.1973), *remand accepted*, 208 NLRB 615 (1974).[4] The Board also recognized that: "It is possible that, in some situations, at least a rebuttable presumption of majority will arise from an 8(f) contract. This might occur, for example, when a union-security agreement is present in the 8(f) contract and has been enforced." *Id.* at 695 n.5.

Courts have followed the Board's position that a majority of the employees having become union members pursuant to a union security clause creates only a rebuttable presumption of the union's majority status. *Higdon*, 434 U.S. at 351 n.12, 98 S.Ct. at 660 n.12; *Authorized Air Conditioning*, 606 F.2d at 905–06.[5]

---

2. The Board's amended complaint alleged, as alternatives, two appropriate bargaining units. One unit consisted of Precision alone. The other was a multi-employer unit. Precision admitted the appropriateness of a single employer unit in its answer. The Board does not contest the issue here, and apparently assumes that the single employer unit is appropriate.

3. The instant case was brought as an unfair labor practice proceeding. We need not decide whether the union may be entitled to enforcement of the contract under Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185. *See Contractors Health & Welfare Plan v. Associated Wrecking Co.*, 638 F.2d 1128 (8th Cir. 1981).

4. The Board may change its mind, but when it does so it is "obliged to set forth its reasoning in favor of the change in order to avoid the appearance of arbitrariness." *NLRB v. Mercy Hospitals of Sacramento, Inc.*, 589 F.2d 968, 972 (9th Cir. 1978), *cert. denied*, 440 U.S. 910,

99 S.Ct. 1221, 59 L.Ed.2d 458 (1979). *See NLRB v. Metropolitan Life Insurance Co.*, 380 U.S. 438, 443, 85 S.Ct. 1061, 1064, 13 L.Ed.2d 951 (1965); *Monmouth Medical Center v. NLRB*, 604 F.2d 820, 823 (3d Cir. 1979); *Bay Medical Center v. NLRB*, 588 F.2d 1174, 1177 (6th Cir. 1978), *cert. denied*, 444 U.S. 827, 100 S.Ct. 53, 62 L.Ed.2d 35 (1979); *Retail Clerks Local 560 v. NLRB*, 510 F.2d 802, 807 (D.C.Cir. 1975). The Board has not attempted to do so in this case.

5. Our decision is not inconsistent with *NLRB v. Irvin*, 475 F.2d 1265 (3d Cir. 1973). In that case, the pre-hire contract was deemed binding only at those projects at which the union had secured a majority. There is no indication that majority union membership itself raised an irrebuttable presumption of majority union support. *Id.* at 1271. *See Higdon*, 434 U.S. at 345–46, 98 S.Ct. at 657–58.

It is irrational to hold that majority union membership obtained pursuant to a union security clause creates an irrebuttable presumption of majority union support. A union security clause operates "to compel new employees to join the union," because union membership is the price for obtaining a job. *NLRB v. Forest City/Dillon-Tecon Pacific*, 522 F.2d 1107, 1109 (9th Cir. 1975). This court has previously stated that: "It is well established that union membership is not always an accurate barometer of union support." *Authorized Air Conditioning*, 606 F.2d at 906; *NLRB v. Tahoe Nugget, Inc.*, 584 F.2d 293, 307 (9th Cir. 1978), *cert. denied*, 442 U.S. 921, 99 S.Ct. 2847, 61 L.Ed.2d 289 (1979); *Sahara-Tahoe Corp. v. NLRB*, 581 F.2d 767, 772 (9th Cir. 1978), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2837, 61 L.Ed.2d 284 (1979). In this case the existence of majority union membership is insufficient by itself to raise an irrebuttable presumption of majority support. *See NLRB v. Band-Age, Inc.*, 534 F.2d 1, 4 (1st Cir.), *cert. denied*, 429 U.S. 921, 97 S.Ct. 318, 50 L.Ed.2d 288 (1976).

## CONCLUSION

The rule adopted by the Board, that majority union membership obtained pursuant to a union security clause creates an irrebuttable presumption of majority union support, is inconsistent with the Act. Precision's petition for review is granted. The Board's cross-application for enforcement of its order is denied. We remand to the Board for further proceedings not inconsistent with this opinion.