**CONSTRUCTION ERECTORS, INC.,**
Petitioner and Cross-Respondent,

v.

**NATIONAL LABOR RELATIONS BOARD,** Respondent and Cross-Petitioner.

Nos. 80–7589, 80–7680.

United States Court of Appeals, Ninth Circuit.

Submitted Aug. 10, 1981.

Decided Nov. 16, 1981.

802

Barry W. Marr, Torkildson, Katz, Jossem & Loden, Honolulu, Hawaii, for petitioner and cross-respondent.

Kenneth B. Hipp, Deputy Asst. Gen. Counsel, Washington, D. C., for respondent and cross-petitioner.

Before DUNIWAY and SNEED, Circuit Judges, and TASHIMA,* District Judge.

TASHIMA, District Judge:

Construction Erectors, Inc. (the "Company") petitions for review of a decision of the National Labor Relations Board (the "Board"). The Board has cross-petitioned for enforcement of its order. The Administrative Law Judge's ("ALJ") Findings of Fact and Conclusions and the Board's Decision and Order are reported at 252 NLRB No. 85 (1980).[1]

On December 10, 1977, the Company entered into a collective bargaining agreement with Local 625 of the International Association of Bridge, Structural, and Ornamental Ironworkers, AFL–CIO (the "Union"). The Company repudiated the agreement on February 28, 1979, asserting, *inter alia*, that it no longer employed any Union members. An unfair labor practice charge was filed by the Union on March 13, 1979.

PROCEEDINGS BEFORE THE BOARD

The ALJ found that the Company had committed an unfair labor practice by repudiating its contract with the Union and held that, at the time of the 1977 agreement

* Honorable A. Wallace Tashima, United States District Judge, Central District of California, sitting by designation.

1. The facts are fully detailed in the ALJ's decision. The facts necessary to explain our decision are set forth in Part II of the "Discussion," which follows.

between the Company and the Union, *i. e.*, on December 10, 1977, the Company's employees were a stable unit and the Union had the support of a majority of that unit. As a result, he concluded that the agreement was governed by § 9(a) of the National Labor Relations Act (the "Act"), 29 U.S.C. § 159(a), rather than § 8(f), 29 U.S.C. § 158(f), that the Union was entitled to be recognized as the exclusive representative of all ironworkers employed by the Company for the remainder of the term of the agreement and that the Company was, therefore, not free to unilaterally terminate the contract and withdraw recognition from the Union. The ALJ recommended that the Board issue a cease and desist order, award backpay to all employees in the bargaining unit who had lost wages since the time the Company repudiated the contract and require the Company to make up any payments it owed to the Union trust fund pursuant to that contract.

The Board affirmed the ALJ's findings and conclusions, and adopted his recommended order.

## ISSUE

Was the Board's finding, that there was a permanent and stable workforce at the time the Company and the Union signed the 1977 agreement, supported by substantial evidence.

## DISCUSSION

I. *Standard of Review and Applicable Law.*

■ On review of an order of the Board, this Court's inquiry is limited to whether the Board's factual findings are supported by substantial evidence on the record as a whole, and whether the Board's application of those findings is rational and consistent with the Act. An order meeting this test is entitled to enforcement. *Beth Israel Hospital v. NLRB*, 437 U.S. 483, 501, 98 S.Ct. 2463, 2473, 57 L.Ed.2d 370 (1978); *Precision Striping v. NLRB*, 642 F.2d 1144, 1146 (9th Cir. 1981).

■ Generally, it is an unfair labor practice for an employer and union to sign a collective bargaining agreement recognizing a minority union as an exclusive bargaining representative. *International Ladies Garment Workers Union v. NLRB*, 366 U.S. 731, 81 S.Ct. 1603, 6 L.Ed.2d 762 (1961). However, § 8(f) of the Act creates an exception to this rule, allowing a construction industry employer to execute a "pre-hire agreement" with a Union that has not yet attained majority status. This exception recognizes the unique nature of the construction industry. Employees in that industry tend to move frequently from job to job, making it impossible for the NLRB to conduct an election at each site. The use of pre-hire agreements also facilitates bidding, by allowing a contractor to compute his labor costs before submitting his bid for a particular job. *NLRB v. Local Union No. 103, Int'l Assn. of Bridge, Structural & Ornamental Iron Workers, AFL–CIO*, 434 U.S. 335, 348, 98 S.Ct. 651, 659, 54 L.Ed.2d 586 (1978) ("*Higdon*").

■ A pre-hire agreement under § 8(f) does not entitle a union to full rights until it can show that it has attained majority support in the relevant bargaining unit. An employer is free to repudiate a § 8(f) agreement and call for a bargaining representative election at any time. *Higdon, supra*, at 345, 98 S.Ct. at 657. Once a union achieves majority status, however, "the pre-hire agreement attains the status of a collective bargaining agreement executed by the employer with a union representing a majority of the employees in the unit", *id.* at 350, 98 S.Ct. at 660, and the employer becomes obliged to recognize the union as bargaining representative for the duration of the contract. *Pioneer Inn Associates v. NLRB*, 578 F.2d 835, 838–39 (9th Cir. 1978).

■ One method employed by the Board in deciding whether construction industry bargaining agreements are voidable § 8(f) contracts or binding § 9(a) contracts is to determine whether the agreement in question covers a permanent and stable unit of employees. *See, e. g., Precision Striping, Inc.*, 245 NLRB No. 34, 102 LRRM 1264

(1979), *enf. denied*, 642 F.2d 1144 (9th Cir. 1981); *Land Equipment, Inc.*, 248 NLRB 685 n.2 (1980), *enf'd* 649 F.2d 867 (9th Cir. 1981) (memorandum); *Hageman Underground Construction*, 253 NLRB No. 7, 1980–81 CCH NLRB ¶ 17,486 (1980). If the union represents a majority of employees in a stable unit when the contract is executed, the contract is treated as a binding § 9(a) agreement from the date of its execution. If the union does not represent a majority at the time of contract execution, but later achieves a majority in a stable unit, the Board deems the contract to be initially a § 8(f) agreement that is later converted to a § 9(a) agreement. In either situation, once the contract becomes a § 9(a) agreement, it is binding for the term of the agreement under the "contract bar" principle.[2] On the other hand, when a construction industry employer has no stable complement and hires its employees on a project-by-project basis with little employee carryover from site to site,

> "majority status among employees at a given jobsite is not presumed to carry over automatically to future sites and 'the union must demonstrate its majority status at each new jobsite in order to invoke the provisions of Section 8(a)(5) of the Act.'"

*Hageman Underground Construction, supra*, at n.7, *citing Dee Cee Floor Covering, Inc.*, 232 NLRB 421 (1977), 1977–78 CCH NLRB ¶ 18,658.

II. *Application of the Legal Standard to this Case.*

■ As we have stated, the Board found that on December 10, 1977, the Company had established a permanent complement of at least six ironworkers which it maintained until the outbreak of a strike in late November, 1978. However, only six of the Company's 13 employees, on December 10,

1977, the date of the agreement between the Union and the Company, had been working there more than three weeks prior to that date. Two of these six were not Union members and were not primarily employed as ironworkers. Only one of these six was employed by the Company during 1978. Of the entire complement of 13 employed on December 10, 1977, only two were still employed at the end of January, 1978. There also was evidence before the Board that 62 employees were referred from the Union hiring hall during 1978. Therefore, we conclude that there was not substantial evidence to support the Board's finding that there was a permanent and stable work force at the time of the agreement between the Union and the Company.

The facts of this case, thus, clearly distinguish it from the cases relied on by the Board. For example, in *Precision Striping, supra*, the employer was found to have employed the same five persons from September, 1977 until the contract was repudiated in March, 1978. 245 NLRB No. 34 at n.10. Similarly, in *Hageman Underground Construction, supra*, three identifiable backhoe operators were transferred by the company from project to project. These three were held to constitute a stable unit because the company operated only four backhoes in all. 253 NLRB No. 7, 1980–81 CCH NLRB at 28,246–47.

The Board made no finding as to whether or not the Company's force of ironworkers had become a permanent and stable unit at any time after January, 1978. The Board now contends that at the time of the strike in November, 1978, there were six workers who constituted the entire ironworker complement and that they had worked for the Company on a relatively continuous basis throughout 1978.[3] The Board, however, did not rely upon this evidence to find that the

---

**2.** Under the "contract bar" rule, the Board will ordinarily not entertain a challenge to an incumbent union's majority status during the term of an agreement of three years duration or less. *Pioneer Inn Associates, supra*, 578 F.2d at 838; *General Cable Corp.*, 139 NLRB 1123, 1124 (1962); *Hexton Furniture Co.*, 111 NLRB 342, 344 (1955).

**3.** The Board's brief names these six ironworkers and states that two worked for the Company from January through November, three worked from April through November and one worked from May through November.

workforce of ironworkers became permanent and stable during the latter part of 1978. Thus, the facts relied on in the Board's brief cannot be relied upon by us to support the Board's order. As the Court stated in *NLRB v. Metropolitan Life Ins. Co.*, 380 U.S. 438, 444, 85 S.Ct. 1061, 1064, 13 L.Ed.2d 951 (1965):

> "[T]he integrity of the administrative process requires that 'courts may not accept appellate counsel's *post hoc* rationalizations for agency action ...' *Burlington Truck Lines v. United States, supra,* [371 U.S. 156] at 168 [83 S.Ct. 239 at 245, 9 L.Ed.2d 207]; see *Securities Exchange Comm'n v. Chenery Corp.,* 332 U.S. 194, 196 [67 S.Ct. 1575, 1577, 91 L.Ed. 1995]. For reviewing courts to substitute counsel's rationale or their discretion for that of the Board is incompatible with the orderly function of the process of judicial review."

Because of his conclusion as to the stability of the Company's workforce on the date the 1977 agreement was executed and his application of the "contract bar" rule, the ALJ did not reach the question of whether the Union had majority support at any other time prior to the repudiation of the agreement. The Company claims that it employed no Union members at the time it repudiated the agreement. If this is true, the Company cannot be found to have committed an unfair labor practice, unless the Board finds that at some time prior to the repudiation of the 1977 agreement, the workforce in the bargaining unit had become permanent and stable and the Union obtained majority support within the unit at that time. Otherwise, the Union must demonstrate its majority at each new jobsite in order to invoke the provisions of § 8(a)(5) of the Act. *Dee Cee Floor Covering, supra,* 1977–78 CCH NLRB at 31,024.

### CONCLUSION

The Company's petition for review is granted and the Board's order is vacated. The Board's cross-petition for enforcement of its order is denied. We remand to the Board for further proceedings not inconsistent with this opinion.

VACATED AND REMANDED.