822 F.2d 890
 126 L.R.R.M. (BNA) 2078, 107 Lab.Cas. P 10,073
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
MARIN OPERATING, INC., d/b/a The Clarion Hotel-Marin;
Colorado Marin Associates, A Joint Venture, Respondents.
MARIN OPERATING, INC., d/b/a The Clarion Hotel-Marin;
Colorado Marin Associates, A Joint Venture, Petitioners,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 NLRB Nos. 20-CA-19106, 20-CA-19119.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 14, 1987.
Decided July 21, 1987.
 
 Joseph A. Oertel, Washington, D.C., for petitioner-cross-respondent.
 Gerald Tockman, St. Louis, Mo., for respondents-cross-petitioners.
 Application for Enforcement of an Order of the National Labor Relations Board.
 Before WALLACE, KENNEDY and WIGGINS, Circuit Judges.
 WALLACE, Circuit Judge:
 
 
 1
 The National Labor Relations Board (Board) applies for enforcement of its order requiring Marin Operating, Inc. and Colorado Marin Associates (Marin) to recognize and bargain with two unions, and Marin cross-petitions for review of the order. The principal issue is whether a successor employer may refuse to bargain with an incumbent union on the ground that the bargaining unit is inappropriate because a predecessor employer, in recognizing the union 12 years earlier, violated a Board order. The Board had jurisdiction over the proceedings below pursuant to 29 U.S.C. Sec. 160(c) and we have jurisdiction pursuant to 29 U.S.C. Sec. 160(e), (f). We enforce the Board's order and deny the petition for review.
 
 
 2
 * In 1969, Marin Chitmar, Inc. (Chitmar), owned and operated a combined hotel and restaurant. Chitmar recognized the Hotel Employees & Restaurant Employees Union, Local 126 (Local 126) as the collective bargaining agent for its employees. In 1971, the Board determined that Local 126 did not represent a majority of the employees and ordered Chitmar to withhold recognition until Local 126 was certified as the employee representative in a Board conducted election. After an election held in 1972, the Freight Checkers, Clerical Employees and Helpers Local 856 (Local 856) was certified as the representative for the employees. Later that year, however, Local 856 ceded jurisdiction over the restaurant and bar employees (the culinary unit) to Local 126 while retaining jurisdiction over the hotel employees (the clerical/housekeeping unit). A vote taken among the employees by a show of hands indicated that the employees overwhelmingly approved the transfer of union jurisdiction. Chitmar and its successors negotiated successive collective bargaining agreements with the two unions over the next 12 years.
 
 
 3
 By 1984, a group of companies (Holiday) had succeeded Chitmar as the owner and operator of the hotel and restaurant. On June 21, 1984, Holiday transferred ownership and operation of the facility to Marin. When Marin took over, it projected a need for 135 hourly employees. On June 21, Marin employed 99 hourly employees, all of whom had previously been employed in the same or similar positions by Holiday. By June 26, both Local 126 and Local 856 had requested that Marin recognize them as, respectively, the culinary unit representative and the clerical/housekeeping unit representative. Marin declined on July 2.
 
 
 4
 Both unions filed charges with the Board. The regional director of the Board issued a consolidated complaint alleging that Marin violated section 8(a)(5) of the National Labor Relations Act (the Act), 29 U.S.C. Sec. 158(a)(5), because it was a successor employer obliged to recognize and bargain with the two incumbent unions. The complaint also alleged that Marin had engaged in acts which constitute unlawful coercion and discrimination in violation of sections 8(a)(1) and 8(a)(3) of the Act. An administrative law judge (ALJ) heard extensive testimony. The ALJ concluded that Marin conducted essentially the same business as its predecessor, and that on June 21, Marin's entire work force consisted of former employees of its predecessor. The ALJ considered Marin's contention that it was not required to bargain with the unions because Local 126's recognition following the transfer of jurisdiction in 1972 violated a Board order. The ALJ rejected this defense as time-barred by the six-month limitations period in section 10(b) of the Act, 29 U.S.C. Sec. 160(b). The ALJ also determined that the employee units represented by the two unions were appropriate bargaining units. The ALJ therefore concluded that Marin was a successor employer required to recognize and bargain with the two unions upon demand. Finally, the ALJ concluded that Marin committed various acts amounting to unlawful coercion and discrimination.
 
 
 5
 The Board adopted the ALJ's decision and recommended order with only minor modifications. The Board ordered Marin to recognize and bargain with Local 856 as the representative of the clerical/housekeeping employees and with Local 126 as the representative of the culinary employees. The Board further ordered Marin to cease and desist from discriminatory and coercive practices, to restore the terms and conditions of employment to those that existed at the time the unions requested recognition, to reinstate a demoted employee, and to post an appropriate notice.
 
 
 6
 The Board applied to us for enforcement of its order and Marin cross-petitioned for review. We will enforce the Board's order "if the Board correctly applied the law and if its findings of fact are supported by substantial evidence in the record viewed as a whole." NLRB v. Southern California Edison Co., 646 F.2d 1352, 1362 (9th Cir.1981); see also Fall River Dyeing & Finishing Corp. v. NLRB, --- U.S. ----, 107 S.Ct. 2225, 2235, 96 L.Ed.2d 22 (1987) (Fall River ).
 
 II
 
 7
 Section 8(a)(5) of the Act makes it an unfair labor practice for an employer "to refuse to bargain collectively with the representatives of his employees." 29 U.S.C. Sec. 158(a)(5). A "representative" is one who is "designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes." 29 U.S.C. Sec. 159(a). In certain circumstances, a presumption arises that a representative enjoys majority support although the employees have not yet voiced that support. One such case involves a "successor employer"--one who conducts essentially the same business as its predecessor and who hires its predecessor's employees as a majority of its work force. Fall River, 107 S.Ct. at 2234; Premium Foods, Inc. v. NLRB, 709 F.2d 623, 627 (9th Cir.1983) (Premium Foods ). When a predecessor employer has recognized a union as the representative of its employees, and a successor employer hires a majority of its workers from these employees, a presumption arises that the union continues to enjoy the support of a majority of the successor's employees. Premium Foods, 709 F.2d at 627.
 
 
 8
 Marin does not challenge the Board's finding that it conducts essentially the same business as its predecessor, Holiday. Instead, Marin contends (1) that the unions need not be recognized because the two groups of employees represented by the unions were not "appropriate" bargaining units as required by section 9(a) of the Act, 29 U.S.C. Sec. 159(a); and (2) that Marin did not hire a majority of its employees from its predecessor. We consider these contentions in turn.
 
 A.
 
 9
 Congress has mandated that the "Board shall decide ... the unit appropriate for the purposes of collective bargaining." 29 U.S.C. Sec. 159(b). Defining appropriate bargaining units "involves of necessity a large measure of informed discretion, and the decision of the Board, if not final, is rarely to be disturbed." Packard Motor Car Co. v. NLRB, 330 U.S. 485, 491-92, 67 S.Ct. 789, 793, 91 L.Ed. 1040 (1947). Accordingly, the Board's unit determinations "will not be overturned unless there is an abuse of discretion, the Board acted in an arbitrary, unreasonable, or capricious fashion, or the unit is in violation of statute." NLRB v. Mercy Hospitals of Sacramento, Inc., 589 F.2d 968, 972 (9th Cir.1978), cert. denied, 440 U.S. 910, 99 S.Ct. 1221, 59 L.Ed.2d 458 (1979). In determining what constitutes an appropriate bargaining unit, "the Board has long given substantial weight to prior bargaining history. The Board is reluctant to disturb units established by collective bargaining so long as those units are not repugnant to Board policy or so constituted as to hamper employees in fully exercising rights guaranteed by the Act." Buffalo Broadcasting Co., 242 N.L.R.B. 1105, 1106 n. 2 (1979); accord Bay Medical Center, Inc. v. NLRB, 588 F.2d 1174, 1177 (6th Cir.1978), cert. denied, 444 U.S. 827, 100 S.Ct. 53, 62 L.Ed.2d 35 (1979); see also Pacific Southwest Airlines v. NLRB, 587 F.2d 1032, 1045 (9th Cir.1978).
 
 
 10
 The ALJ determined that the units represented by the unions were the historically recognized units. The ALJ also determined that the units "contravene no basic policy under the Act." Each union represented its constituents through four successive collective bargaining agreements with Marin's predecessors. Moreover, Marin does not point to any evidence that the units hampered the employees in exercising their rights, or that the units did not result in a harmonious relationship between the unions, the employees, and the predecessor employers. Without more, we must conclude that the Board's determination that the two units were appropriate was within its broad discretion.
 
 
 11
 Nevertheless, Marin contends that the historical units are inappropriate because they have suspect origins. In 1971, the Board ordered Chitmar to withhold recognition of Local 126 unless the union was certified as a representative after a Board conducted election. In 1972, elections were held for two units. Essentially, the first unit consisted of the culinary workers and the housekeeping workers, and the second consisted of the clerical workers. The Board certified Local 856 as the representative of both units. Local 856, however, ceded jurisdiction over the culinary employees to Local 126. This resulted in the present division of the culinary unit and the clerical/housekeeping unit. Chitmar recognized both unions as representatives of their respective units in violation of the Board's order. Marin contends that because this transfer of jurisdiction was unlawful, the units created by the transfer must be deemed inappropriate.
 
 
 12
 Section 10(b) of the Act, 29 U.S.C. Sec. 160(b), provides that "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge." Section 10(b)'s time-bar applies to defenses, as well as to complaints, based on unfair labor practices occurring more than six months prior to the filing of the charge at issue. See NLRB v. B.C. Hawk Chevrolet, Inc., 582 F.2d 491, 494 (9th Cir.1978). Therefore, because the alleged unlawful transfer of jurisdiction occurred more than six months before the current charge was filed against Marin, the Board determined that Marin is barred from raising that incident as a defense.
 
 
 13
 Marin contends that it does not wish to raise the 1972 transfer of jurisdiction as a defense, but instead is relying on that event as evidence of the inappropriateness of the bargaining units in 1984. Thus, Marin argues essentially that this is merely an evidentiary question and, as such, it does not involve the section 10(b) prohibition of stale defenses. However, in Local Lodge No. 1424, International Association of Machinists v. NLRB (Bryan Manufacturing Co.), 362 U.S. 411, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960) (Bryan ), the Court held that section 10(b) can, in some cases, also bar evidence of prior events when offered to show current unlawful practices. When events occurring within the six-month period violate the Act only if certain earlier events constitute an unfair labor practice, then evidence of the earlier events would not merely be proof relating to recent events, but would also be proof of a time-barred unfair labor practice. Such evidence is inadmissible. Id. at 416, 80 S.Ct. at 826; NLRB v. Tahoe Nugget, Inc., 584 F.2d 293, 298 (9th Cir.1978) (Tahoe ), cert. denied, 442 U.S. 921, 99 S.Ct. 2847, 61 L.Ed.2d 290 (1979). Evidence of earlier events can be admissible, however, "to shed light on the true character" of alleged unfair labor practices or defenses occurring within the six-month limitations period. Bryan, 362 U.S. at 416, 80 S.Ct. at 826; Tahoe, 584 F.2d at 298; NLRB v. Tragniew, Inc., 470 F.2d 669, 673 (9th Cir.1972). Therefore, section 10(b) bars Marin from offering evidence of the unlawful character of events in 1972 as proof of the inappropriateness of the bargaining units. But Marin is not foreclosed from offering evidence of certain events in 1972 that, apart from their unlawfulness, is relevant to show the inappropriateness of the bargaining units in 1984.
 
 
 14
 Marin does not point to any events occurring in 1972 that are relevant to the issue before us except as proof of the unlawfulness of the initial recognition of Local 126. The Board determined that the units were appropriate because they were the historical bargaining units, because they worked well for 12 years in securing the employees' rights under the Act, and because they did not violate policy under the Act. Evidence of events occurring in 1972 does nothing to impugn the Board's conclusion that the units were used for the last 12 years or that the units worked well during that period. The events could conceivably show that the units violated Board policy because the original recognition of Local 126 was unlawful. But, used in this manner, the evidence is barred by section 10(b).
 
 
 15
 Marin argues, however, that section 10(b) does not prevent it from relying upon specific events surrounding the initial union recognition and how the unions operated under the collective bargaining agreements to determine its obligation to recognize the unions. Marin relies on language in Pick-Mt. Laurel Corp. v. NLRB, 625 F.2d 476, 484 (3d Cir.1980) (Pick ), to the effect that section 10(b) should not be "applied to a successor in precisely the same form and to the same extent as it may apply to the predecessor." Despite this language, we do not read Pick as applying the principles from Bryan any differently to a successor employer. See id. at 484-85. Indeed, Marin's argument is foreclosed by the plain language of section 10(b). Its bar extends to a "practice occurring more than six months prior to the filing of the charge." Section 10(b) does not say that the six month period shall be extended for parties who had no interest in the relationship giving rise to the practice when it occurred. Nor has the Board interpreted the statute as having such an exception. We defer to the Board's interpretation of the statute because it is "reasonably defensible." International Alliance of Theatrical Stage Employees v. NLRB, 779 F.2d 552, 555 (9th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 3273, 91 L.Ed.2d 563 (1986).
 
 
 16
 Finally, Marin contends that its operational structure and practices are so different from its predecessor's that the existing culinary and clerical/housekeeping units are inappropriate. Substantial evidence supports the Board's finding that "the minor changes ... made by [Marin are] insufficient to affect the appropriateness of the historical units." Therefore, we conclude that substantial evidence supports the Board's findings and it correctly applied the law in determining that the bargaining units are appropriate.B.
 
 
 17
 Marin's second challenge to the refusal to bargain charge is that it did not hire a majority of its employees from its predecessor as of September 30, 1986. Marin contends that it was not until this date that it had a "substantial and representative" complement of workers. See Premium Foods, 709 F.2d at 628. The Board may consider several factors when determining the date on which a substantial and representative complement was present. Id. But, "[w]hen it is 'perfectly clear' that the employer intends to hire a majority of his work force in a unit represented by a union from the ranks of his predecessor, his duty to bargain with the Union commences immediately." Bellingham Frozen Foods, Inc. v. NLRB, 626 F.2d 674, 678-79 (9th Cir.1980), cert. denied, 449 U.S. 1125, 101 S.Ct. 941, 67 L.Ed.2d 111 (1981); see also Fall River, 107 S.Ct. at 2234-35; NLRB v. Burns International Security Services, Inc., 406 U.S. 272, 294-95, 92 S.Ct. 1571, 1586, 32 L.Ed.2d 61 (1972); Premium Foods, 709 F.2d at 629 ("where the successor takes over from a business in full operation, even if the successor has plans for expansion, a representative complement is usually present on the date the new employer begins").
 
 
 18
 The Board found that Marin had agreed with Holiday, its predecessor, to offer employment to all of the predecessor's employees; that all 99 of Marin's employees on the date it began operations were formerly employees of Holiday; and that even when on July 30 the work force had been expanded to its full complement of 135, the majority of the employees in each bargaining unit were former employees of the predecessor. Marin argues, however, that the appropriate date for determining when it had a majority was September 30, when the 90-day probation period it imposed on the employees had expired. The Board found that the September 30 date had "little if anything to do with employment levels." The Board's findings are supported by substantial evidence and it correctly applied the law in concluding that Marin hired a majority of its employees from its predecessor when a substantial and representative complement of Marin's work force was in place.
 
 III
 
 19
 Marin's other contentions need only a brief response. Marin argues that it had a good faith doubt as to the unions' majority status when they requested recognition. Marin did not raise this "good faith" defense in its answer to the charges, or in its exceptions to the ALJ's findings and conclusions; nor did the ALJ or the Board address the issue. We cannot consider objections that have "not been urged before the Board, ... unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." 29 U.S.C. Sec. 160(e). We do not find such extraordinary circumstances in this case and therefore cannot consider the good faith defense. See Idaho Falls Consolidated Hospitals, Inc. v. NLRB, 731 F.2d 1384, 1386 (9th Cir.1984).
 
 
 20
 Marin also contends that the Board should not have ordered it to restore the terms and conditions of employment which were altered after the unions demanded recognition because this matter was not included in the complaint nor litigated at the hearing. This aspect of the Board's order does not rest on a separate finding that Marin had committed an unfair labor practice by unilaterally altering the terms of employment. The order restoring the terms of employment to the status quo ante is a remedy for Marin's violation of section 8(a)(5) by refusing to bargain. Marin had adequate notice of this charge, and therefore had adequate notice that the Board might apply any remedy in its power should the Board find against Marin on this charge. Marin does not dispute that the Board had the power to require restoration of the status quo ante as a remedy to a section 8(a)(5) violation. Therefore, this contention is meritless.
 
 
 21
 Finally, Marin challenges the Board's finding that employee Buza was constructively demoted for picketing. We conclude that substantial evidence supports this finding.
 
 
 22
 ORDER ENFORCED; PETITION FOR REVIEW DENIED.